We're back and the first case up is United States v. Guerrero-Torres. Ms. Blue. Good morning. May it please the court. The question before this court today is a narrow one of standing. The appellant argues that the district court erred in finding there were no reasons to separate the contents of a cell phone that was password protected from the physical device itself for the purposes of abandonment. The warrantless forensic search performed here using the expert tool Celebrite demonstrates and shows how the fact-intensive abandonment analysis should be different for the contents of a password protected phone as opposed to the physical device itself. Here Mr. Guerrero-Torres showed a subjective expectation of privacy by using a password and objectively society is not prepared to How do we figure into the subjective component, which usually isn't an issue, the fact that he allegedly made the statement that you could always get in the phone if you wanted to? I'm paraphrasing of course, but you know what I'm talking about. My understanding is that he testified at the motion to suppress, which was limited to abandonment, that he password protected it in order to keep his privacy. I thought there was also testimony which the district court credited that he had told the officers during the interview that he knew you could get to information on the cell phone even if it was password protected. Am I misinterpreting that? I think he believed that the cell phone could be rebooted and wiped and restarted, but that his information was password protected. And that was his testimony? That was his testimony. And the district court credited his testimony? The district court found him incredible with respect to the throwing out of the phone, but the district court did not make a specific finding as to his belief on the forensic tool or the ability of law enforcement. But don't we presume that the district court implicitly made any fact findings that didn't explicitly resolve the issue one way or the other? Don't we presume that the district court implicitly found facts in favor of its ruling? Here I think the district court simply found that abandonment analysis was no different for the phone itself and for its digital content. That's the finding that we believe is clearly erroneous here. They found that they disagree, we disagree with the district court's finding that society is not prepared to accept as reasonable in 2016 or 2019 that law enforcement can use a forensic tool here without a warrant. The forensic tool at issue here is a deep dive forensic tool done by an expert detective which recreates files on a password protected phone. It breaks through the password. It recreates the digital data available here. This is a case that's different from Sparks, upon which the district court did rely. Its analysis is largely based upon Sparks, in which this court found in 2015 that the cell phone had been abandoned. There, of course, the fact that the cell phone was not password protected was a fact weighing heavily in favor of its decision to find that the cell phone had been abandoned. In fact, this court mentioned that there the defendants had decided to abandon the phone and its contents, making the conscious choice to allow a stranger to keep their phone  In the fact-intensive analysis of Sparks, as abandonment is a fact-intensive analysis, the lack of password factored into it. That's why Appellant argues that Sparks is not controlling the question presented here. Ms. William, what do we do with our circuit precedent that limits Riley to incident of arrest? Following the decision in Vergara, the Supreme Court issued Carpenter, in which it applied the analysis of Riley that digital contents of a phone are different from any physical property in a different context. We already know that it is not true, as Vergara says, that Riley only holds to search incident to lawful arrest. In Carpenter, in a different area of Fourth Amendment law, the Supreme Court again said that the privacy concerns of digital data on cell phones are so profound that the traditional doctrine of third party breaking the requirement for a warrant does not apply, because there, even though the Carpenter defendants had their GPS information from cell phones, even though they are technically giving it to the wireless carriers, Verizon, or whoever your carrier is, and that's technically a third party, the Supreme Court held after Vergara, that in that case too, it's not applicable to say that that breaks the privacy analysis. But Vergara came after Riley. Vergara came after Riley. I didn't see anything in Carpenter that it's relevant to Vergara and our case, which could keep Vergara from being controlling here, and it did seem to me that our case is almost a fortiori from Vergara, because there, in a border search, you have to have reasonable suspicion. Here, with an abandonment, you need no suspicion at all. So if Vergara is correct, is it not pretty clear that this case has to go against you? I would argue that abandonment is different from the border exception. Abandonment addresses whether privacy exists at all, whether Mr. Guerrero-Torres can claim a privacy interest as a threshold issue in the password-protected encrypted data of his cell phone. Vergara talks about border searches, which is an exception to the warrant requirement, so it's in a different context. There, there's already a private interest. Why should that make a difference? Because I believe that here it would not be following the precedent of Vergara to hold that an abandonment, that Mr. Guerrero-Torres has abandoned all interest, that there's no distinction between his password-encrypted data and the cell phone, would not be based on the precedent of Vergara. And again, I do believe respectfully that Carpenter, which came out after Vergara, showed that the finding in Vergara that Riley was limited to search incidental lawful arrest is probably not accurate, according to current precedent. If it, wait, let me ask you this way. Without removing the password, in your view, is there any way a person can abandon password-protected information? I think that a person could abandon, not in the traditional sense, I think that you would only be able to. In the nontraditional sense, is there any way? Only by giving it to law enforcement for help or in consent. Whatever he does with the phone, there's no way he can abandon password protection. I don't believe he can abandon the password protection digital contents. I believe that law enforcement should be required to get a warrant to do a digital search. Should be required is different from are required because it hasn't been abandoned. He could put a phone up on a bench post or on a table and say, free cell phone and somebody, I'm going to California, and somebody could get the cell phone and he hasn't abandoned the password-protected information in it. No, I don't believe that he has, Judge Carnes. I believe that, to your prior question, one of the things that the record did state is that the person who found his phone knew of people who could reset phones to factory settings. So I do believe that, to answer your question, if you abandon your password-protected phone in any manner, if you lose it or you abandon it, you have not abandoned the privacy interest in your password-protected content. I believe society would accept as reasonable that someone who found the phone could scrub it back to factory contents and begin to use it as their own. But people who can do that, scrub it back to its factory settings, like the iTunes store or the iPhone store, that's not getting into the password-protected data. So I don't believe that society is prepared to accept as reasonable warrantless forensic searches of digital password. Even if somebody deliberately throws it down? Yeah. I would like, if my brother and sister would permit, you to address the exigent circumstances, because it seems to me that's an even easier way to affirm this case than the Fourth Amendment standing issue. Sure. So I have two responses to that, Judge Anderson. First, the district court twice explicitly limited the arguments and evidence of standing in this case by saying, before we even get into the significant portion of the hearing, the first thing the court has to do is establish that you have standing. Counsel, just have your argument deal with the issues of standing before this court. They explicitly limited the factual findings of exigent circumstances. The second argument is . . . Let me move on to that one. It seems to me that there was no such limit. When it was first brought up during the hearing, which was in your closing argument after all the evidence, the district court said . . . No, no, this is the very beginning of the hearing. The district court said, and I'm quoting, before we can even get into a significant portion of the hearing, the first thing we have to do, or the first thing the court has to establish, is that you have standing to even bring the issues before the court. That doesn't seem to me to limit it. It just says we'll do this first. Then, at the end of the hearing, after the evidence, you were closing an argument, and you brought it up, and the government objected, and the court, all it said is, just have your argument deal with the issue of standing at this point. It didn't limit you later. If you wanted to preserve your appeal on that, it seems to me you could have asked to have evidence on that because you wanted to preserve the issue for appeal. Frankly, you don't have any evidence in the district court, or you didn't proffer any evidence on appeal on that issue. On appeal, I do think that we argue that, although the court need not address the exigent circumstances in this case because of the limitation of the district court, should it begin to address that, this is not a case where the exigent circumstances, even the limited facts on the records, show that this is not a case where that exception applies to the warrant requirement. Exigent circumstances are split-second decisions. Had the officers here simply scrolled through the most recent calls and the texts to look for it as part of their search in an emergent situation, we wouldn't be here today. Instead, with much anticipation, between fourteen and sixteen hours in their possession, they turned it over to an expert forensic detective who engaged in the type of technological search that takes itself several hours. This is not the situation in which the exigent circumstances would have precluded the getting of a warrant. Indeed, they got a warrant for the GPS data of this phone in order to find the phone. Well, that was before they found the phone. Right. Once they found the phone, they found him in close proximity. So the detectives concentrated, and it was overnight. It wasn't like they found the phone in him at 8 a.m. in the morning and had the day to deal with it. Overnight, they interviewed him and tried to find out where the little girl was. That was the focus of their activity, and the lead detective and the other detectives came in and tried to do that. Correct, but once the appellant was in their custody, and they had custody of this phone, there was 14 to 16 hours before it was turned over to the forensic detective in order to conduct this celebrated search. That's plenty of time to get a warrant. In my opinion, the exigent circumstances, even on the limited factual basis that we know, again, I think that the facts would need to be developed. Was there a forensic detective available in Fort Myers and in Okeechobee? Could they have gotten earlier? In order to develop the exigent circumstances, there's a warrant exception that's very fact-intensive. So I would ask this court to do . . . Let me ask you this. Do you have any case where the officers were as busy as these officers were? I mean, they were completely focused on trying to find this little girl and arrest . . . First, during this time, during this 14 to 16 hours you talk about,  Do you have any case that says that just because they could have gotten a warrant . . . Obviously, at the same time while they were driving home, they could have used their cell phone and called ahead. So obviously, they could have. But I don't know of any cases that say just because you could possibly have done it, it's not . . . Do you have any such case? I don't have a case, Judge Anderson, that would say a situation very parallel to this. But I do think that all the leading cases on the Fourth Amendment do a balancing act between the facts at issue. And here, the nature of the search they knew they were going to conduct should inform that analysis, in my opinion. This is the type of search for which they had time to get a warrant and for which a warrant would not have precluded the search in any way. And I think that typically the exception for exigent circumstances should be applied where application for a warrant would have precluded the search. Let me ask you this. Didn't he erase the images on the phone to the extent one can erase anything from a cell phone? Yes. All right. If he did that, and he did that when he knew the police were coming to interview him and before he threw the phone away, why did he do that if he subjectively believed that the password-protected information would not be obtained? You're smiling as though you anticipated this question. Now here it is. So tell me the answer you've prepared. The answer, I believe, is that his deletion of data from his phone prior to abandoning it only shows that he certainly believed that it was subject to privacy. The things we delete from our digital history, we certainly don't expect to be discovered by others. So I think it only reinforces his own subjective expectation. Whether or not society has expected— That to me shows that he didn't expect the password would be enough. He didn't have a subjective expectation that the password would do it. Okay. To me, it shows that he believed he was removing it from his phone completely. And so to allow warrantless search that could recreate deleted files, which is what this search can do, right? The password is not necessary. If somebody deletes the pictures on their phone and the officers look at the phone and recreate the deleted images, no password involved, that still violates the Fourth Amendment. An officer would not be able to recreate deleted images without the type of forensic tool that was used. I understand, but it's not a password-busting forensic tool. The tool does bust passwords and also recreate deleted images. The same, there's nothing—passwords have never been invented. Or better yet, there's a bug on Apple and other phones that erases all passwords. The guy just simply deletes his picture. And the officers get the phone and they take it to a specialist and he or she recreates the images and recaptures the images. Now . . . In that case, Judge Carnes, I do believe a warrant would be necessary, but that's not the case before us because the case before us is subjective use of a password also does make it different from the precedent of this court. But yes, in that case, I do think a warrant would be necessary. The case before us, I believe that his use of password protection goes towards showing his subjective expectation of privacy and also goes toward what society objectively believes is reasonable in 2016 to be done with him without a warrant. 2016. Thank you. I've gone over my time. We'll give you five. We'll give you your regular five on reply. Ms. Gershaw. Good morning, Your Honors, and may it please the court. I'd like to start by addressing a couple of the arguments that Guillermo Torres raised. First, with respect to the subjective expectation of privacy, the district court made the finding, turning to defendants' past co-protective position, his argument contravenes his testimony that he deleted the alleged child pornographic images on his cell phone prior to discarding the phone. That is a factual finding. Where is that? That is on page 17 of the district court's order. Towards the end, I understand. The second paragraph. Yes. I had a question mark behind that for some reason. I'm not sure why. I think that's absolutely a factual finding, that he did not subjectively believe that the password would protect the privacy of his phone. And that is a finding that this court should review for clear error, and there's nothing on this record that would show that that was a clear error. With respect to the argument that this Cellebrite technology causes a deep dive into the phone, that's never been the standard. The court has recognized that when you put something out into the world that people can come across, your mere failure to anticipate that the police would be able to use technological ingenuity to break a password is not the standard for abandonment. The standard for abandonment is, do you have an objective intent to discard or leave behind this item? And here he clearly did. There is nothing in the record that suggests that he ever had any intent to go back and reclaim the contents of his cell phone. So when he abandoned his cell phone, he abandoned both the cell phone and the contents of it. And with respect to Carpenter, and Carpenter having some sort of impact on Riley, again, in Carpenter, the court expressly limited its holding to seven or more days of historic cell site location information. It wasn't talking about cell phones in general. It was talking about cell site location information being turned over to third parties. And again, the basis of the court's decision in Carpenter is that when you have a reasonable expectation of privacy generally in your information, and when you share it, that diminishes your expectation of privacy. But when you balance it against the amount of private information in your historic cell site location, that is an unreasonable search under the Fourth Amendment. But when you have abandonment, you don't get to the question of whether the search was reasonable, because the Fourth Amendment doesn't apply to abandoned property. So Carpenter also has no application to this case to the extent that it would require the adoption of a blanket rule that password-protected cell phones can never be abandoned. And then that brings me to counsel's next point, where she says that a password-protected cell phone can never be abandoned, regardless of the circumstances. What would have happened if Guero Torres, when he was interviewed, they had said, is this your cell phone? And he said, no, it's not my cell phone. Under her theory, that would still not be abandoned, because he didn't say, well, the contents of my cell phone are not mine. This court has never separated the contents of the container from the container, regardless of what type of information that container contains, and regardless of the steps that the defendant has taken to maintain the privacy of his phone prior to tossing it away. Guero Torres ditched his cell phone. He then fled. He told the officers that he threw it away because it was garbage. He knew that a third party had his phone, and he made no efforts to reclaim that phone from that person. Under these objective facts, there is no basis to find that the district court clearly erred in determining that the phone was abandoned. Now, modern society may require people, as the court rightly recognized, to carry cell phones with them at all times, but nothing about modern society requires them to throw them away in a public place. It is that act of throwing away that is relevant to the abandonment analysis. When somebody throws something away, they can no longer carry it. You know, it seems to me like you're not really meeting the strongest argument on the other side, which is, sure, he abandoned the cell phone, but he didn't abandon the information and his privacy interests in the information protected by the password. Again, this court, in the context of abandonment, has never separated the contents of a container from the container. In the briefcase cases, locked briefcases, locked suitcases, the court has recognized that briefcases can contain very private information. That doesn't matter. They can still be abandoned. But you agree with me that the Supreme Court went to great lengths in Raleigh to distinguish cell phones. You know, never before have people carried personal information with them on their person. And for that reason, cell phones are different than a briefcase. You agree with me. Correct, but they did that in the context of a balancing of the diminished expectation of privacy that an arrestee has versus the privacy interest in the contents that they carry. And they said cell phones are unique in that context because when you... Just because you carry a cell phone with you doesn't mean that society would be prepared to accept it as reasonable, that that would be able to be searched just simply because you were arrested. But again, in the context of abandonment, you have made that a permanent choice to throw the cell phone away. And that's what distinguishes abandonment, which is a doctrine that says that the Fourth Amendment doesn't even apply from a search into an arrest in which the Fourth Amendment still applies. It's just that the search is reasonable under the Fourth Amendment. No evidence about whether this was on the cloud or not? This case is not a cloud case. All of the evidence in the record is that the digital information was retrieved from the hard drive of the phone. So this is like sparks in that instance in that we don't need to consider what the ramifications would be if the information had been on the cloud. Was there any evidence about how widespread the knowledge was that notwithstanding passwords, law enforcement, and indeed any cell phone shop would be able to circumvent the password and get the content? Stephen Morehouse testified  and that it didn't delete any of the information on the phone. So that is the evidence on the record, is at least that this landscaper knew that it could be done. Isn't there some evidence that a defendant himself said something to the same effect? He said during an interview, when they asked him, are you surprised that we found these pictures on the phone? And he said something to the effect of no, because I know that police always find everything on phones. I thought he said something like you could take it to any shop and they could find it. I believe what he said in that context was you can take it to any shop and they can break the password that he thought that it could be deleted. But again, I don't think the district court credited that testimony. So when he said that about any shop could do it, he said at the same time, but the content would be deleted when they did that. Is that what he said? Right. You're saying yes? Yes. Yes. But his statement about the police getting it, he didn't indicate that he believed the content would be deleted, right? I'm sorry, I didn't. What did he say about the police accessing the information beyond the password without deleting the information beyond the password? He didn't say that he thought the police wouldn't be able to access it without deleting the information. I know he didn't say that they won't be able to. Did he say that they would be able to? He did not. All right. What's his statement he made about the police? He said, I'm not surprised that you could find those images. Police always find information or things on phones. All right. I'm a little unclear. Why does that not indicate a subjective belief that the officers could access the password-protected information? I think it does. Then I don't understand your first answer to the question. Did he deny making that statement? No. Okay, so that was unrefuted in the testimony. Right. And which officer testified to that? It was not testified to. It was Exhibit 34 at trial, that of his actual recording. It was one of the officers who was interviewing him at the- So there's no dispute he made that statement, whatever it was. Correct. Okay, and then we go to one of the interview exhibits which ought to be in this record. It is. All right. That came in after the district court ruled on the motion to suppress. Correct. Can we consider? Other than the fact it would be terribly inefficient to send it back to the district court and say, consider this, and decide whether you reinstate the opinion that your order and your ruling that you thought was adequate without considering it, consider it. There's case law that says that all of the information that comes in the trial can be considered on appeal. Yeah. But the district court actually didn't enter her order until after the trial. Well, she ruled before. She ruled, but she entered the order after. I know that line of precedent you're talking about, and I always thought it was a little bit odd, but I guess you can consider it to support any previous orders that have been entered, but not to undermine any previous orders, because if the defendant didn't present it and had access to it, you don't want to give him a free shot at the trial, and then he puts in the information if he doesn't get acquitted. But that's another case for another year. Don't worry about it. Can I ask you, with regard to the good-faith exception, what's your best case that precedent specifically authorized the warrantless search of a password-protected phone? I think this would be an extension of Davis, because when you take the binding precedent that we have in this district, in this circuit, that says abandoned property can be searched without a warrant, cell phones can be searched without a warrant, locked briefcases can be searched without a warrant, to say that the police from that could not rely on that precedent to say that they could search this clearly abandoned cell phone, this wasn't a case of police misconduct or trying to skirt the warrant requirement. This was merely them relying on the precedent, and if this court were to, as this court is recognizing, their arguments are basically foreclosed. There's so many Davis cases. What year? Oh, I'm sorry. Your friend there will help you. In the meantime . . . Sorry. Davis, 2011. Okay. Just remind me of the facts of that case, that Davis case. Is that . . . The Davis case was . . . I can read it. If you just give me the site. It's 5564 U.S. 229. Okay. All right, thank you. Can I just turn to the exigent circumstances? How many hours did it take for them to search the phone after they had it in their possession? It took . . . They had the phone in their possession for 16 hours, but this was a rapidly evolving situation, and if you'll recall, the reason they were originally searching for the cell phone was not to look for evidence of the crime on the cell phone, but to locate the key suspect in her disappearance. They located . . . The officer got the phone, and then he immediately went with a task force officer to apprehend the suspect and interview him, which was this . . . Doesn't that argue against exigent circumstances? Well, it's a developing exigency. When he comes out of the wood . . . When Gerrit Torres comes out of the woods without the child, now there's a child that's potentially abandoned in the woods. And I would also say that it was an evolving case of probable cause. While there was arguably probable cause to search the phone from the minute that they got it, at that point it wasn't as clear as when they interviewed him, and he said . . . gave this story that the district court later didn't believe and was facially incredible about how he was walking in the rain, and the phone got wet, and he threw it away, even though the phone clearly . . . So how many hours passed after that story? After that story, four hours. Okay. And is there anything in the evidence about this search of the password-protected information that could only be done in Lee County, and there wasn't anybody in Fort Myers or Okeechobee who could have done it? Is there anything in the record about that? Okay. Thank you. When an individual voluntarily throws an item away, he voluntarily exposes it and all the information it may contain to anyone who may come across it. Cell phones are no different than any other property, and I would ask that this court inform the district court. Thank you. Thank you. Ms. Blum. I have two just very brief points in rebuttal, and then if Your Honors have any additional questions. The first point is about the government continues to argue that there should be no distinction between a physical container and its contents. And our argument is that the Supreme Court in Riley and Carpenter, while making this type of analysis about cell phone data and different exceptions in different portions of the Fourth Amendment, rejected that idea that that analogy between a container and its contents is old. They can no longer be used. This is not the case of a briefcase. This is not the case of trash that has been thrown on the street. So my argument is that the appellant argues that abandonment analysis, in this context, cannot gloss over the distinction between a cell phone and its digital contents. And my second point just has to do with good faith. The Davis case is in 2011, and holds that the officers can reasonably rely on binding precedent. In that case, Gantt came out about search incident to arrest prior to before appeal in that case, and it extended the good faith extension. Here, I do not believe that there's any binding precedent upon which the government could rely because Sparks is a different case. Sparks is a case without prosperous protection. And so I believe that since the default rule, that a warrant would be required for such a search of this phone, that that would be the binding precedent. That the basic Fourth Amendment rule applies, and no exception would apply. Let me ask you this. She says, and I didn't see it in the brief, but she says that his statement that he's not surprised that the officers got the photographs beyond the password because police always get what they want off the cell phone awards to that effect. Not disputed that he made that statement in the transcript, is it? No. Okay. Given that, why does he meet the subjective belief component of privacy? I don't believe that his post . . . First of all, the district court credited some of his statements and found him not credible in other statements. I don't believe what he said post-verdict is particularly relevant to all the factors that go into . . . I'm sorry. He didn't say it post-verdict. That he's not surprised that the police got it? Yeah. That wasn't . . . He didn't say that after the verdict. I thought he said that during the interview by the detectives, and it came in during the trial. Am I wrong about that? Why would they be admitting the interview transcript after he'd been found guilty? I'm sorry. I don't know exactly where the record site where he said that is. Assume with me, which would seem to be the logical progression of things, that the interview transcript came in in trial, and I believe your sister over here is correct that we've held the evidence that comes out during the trial can be considered on the motion to suppress ruling, specifically. That can be considered, let's assume. He said in that transcript of the interview that he had with the officers, it doesn't surprise me they got that information. Why does that not establish that he didn't have a subjective expectation of promise in the password-protected information once he abandoned the phone? I think that he believed that the government had at its disposal the type of tools that could break a password and recreate deleted data doesn't mean that he didn't, upon abandoning the cell phone, have a subjective expectation that such a search could be completed without a warrant. I don't think one precludes the other in this case. I don't think it negates his subjective expectation of privacy in the deleted or abandoned content. Did he testify to what he believed the warrant requirements were on abandoned property with password protection? We're getting fairly esoteric here. Again, the appellant, Mr. Guerrero-Torres, believes that on the limited issue of standing, he maintained a privacy interest in the password-protected data in the cell phone and that this asked the court to remand the district court for a substantive hearing on the motion to suppress to see if any existing Fourth Amendment exceptions overcome his privacy interest, whether it's diminished, whether it's not diminished. We request a remand for factual development on any of the substantive exceptions to the warrant requirements. Thank you. Appreciate it. I think that was well-argued on both sides. Our court heard an en banc case about cell phones called Davis. I was sitting here trying to figure out, well, how does that relate? No, I got it now. Thank you. It's like the ACCA case. You can't be a lead case unless your name is Johnson. Johnson. It's absolutely true. Next up is U.S. v. Spence. Thank you.